IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 6:16-cr-00377-AA |
| Plaintiff, | **OPINION AND ORDER** |
| vs. | |
| STEVEN MATTHEW CHAMBERS, | |
| Defendant. | |

AIKEN, District Judge:

Before the Court is defendant Steven Matthew Chambers' Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Doc. 48. The Court held oral argument on the motion on January 24, 2022 and denied the motion on the record for the following reasons.

## STANDARDS

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25

(2010). Compassionate release under § 3582(c)(1)(A) provides an exception in rare cases. With the passage of the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (Dec. 21, 2018), Congress authorized courts to modify a defendant's sentence on a motion for compassionate release by a defendant:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
>
> (i) Extraordinary and compelling reasons warrant such a reduction; [... ]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The relevant policy statement is found in the United States Sentencing Guidelines, § 1B1.13. The policy statement identifies four categories of extraordinary and compelling reasons: (A) the medical condition of the defendant, including "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;" (B) the age of the defendant; (C) family circumstances; and (D) extraordinary and compelling reasons "other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. 1(A)–(D). The policy statement also requires the court to find that the

defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).

## DISCUSSION

On December 4, 2020, defendant filed a motion seeking compassionate release based on his risk of severe disease and complications from COVID-19 due to his obesity, high blood pressure, and his risk of infection while incarcerated. Doc 34. While that motion was being prepared, defendant contracted COVID-19 and was subsequently deemed "recovered" by the prison's medical staff on December 7, 2020. Ex. F, (doc. 48-1) at 1-2. On December 22, 2020, this Court issued an Opinion and Order denying defendant's motion based on the relatively mild symptoms he experienced during his acute COVID-19 infection and the finding that the prison provided him with adequate care to address those symptoms. Doc. 41 at 4-5.

On January 13, 2022, defendant again filed a motion for compassionate release. Doc 48. Defendant reports that he presented multiple times for care at the Bureau of Prison (BOP) Health Services with complaints of high blood pressure, chest pain, fatigue, and shortness of breath and defendant asserts that the underlying cause of those symptoms is "post-covid" condition. Defendant contends that, because of BOP's "limited resources and a policy of providing only 'medically necessary' care, he will not have access to the specialized, multidisciplinary medical care needed to address and treat his post-covid condition while in custody." Doc. 48 at 12. Accordingly, defendant asks that this Court find that his inability to obtain "appropriate and timely medical care to assess and treat his post-covid condition

while incarcerated is an extraordinary and compelling reason warranting his compassionate release." *Id.* at 14.

Medical records show that BOP Health Services responded to defendant's requests for patient care and medical evaluation multiple times in January, February, March, April, August, and December of 2021. *See generally* Ex. F (doc 48-1) at 5; 10; 15; 18; 24; 28. During those visits, defendant underwent an EKG, which determined his heart rate to be within normal limits. *Id.* at 7-8. Defendant's chest x-ray showed results within normal limits. *Id.* at 9.

Defendant has remained hypertensive, and in February 2021, the BOP nurse ordered labs to check defendant's blood pressure twice weekly for 30 days. *Id.* In March 2021, defendant was prescribed an Albuterol inhaler to improve "peak flow" of his airways after diagnosis of unspecified abnormalities of breathing. *Id.* at 16. In April and May of 2021, Defendant requested and received two doses of Moderna Covid-19 vaccine. *Id.* at 32. During a blood pressure check in April 2021, the nurse counseled defendant concerning a dietary regimen aimed at improving overall health. *Id.* at 20.

After defendant complained that his COVID-19 infection might have caused his organs to fail, defendant underwent testing to evaluate kidney and abdominal health, which returned "unremarkable" findings. Doc. 53 at 72-3. When defendant complained of neck pain, he received a "film c spine" test for his neck. *Id.* By August 2021, after defendant reportedly focused on dietary improvement, defendant's blood pressure dropped within normal limits. Ex. F (doc 48-1) at 24. In December 2021,

defendant's physician advised that subsequent tests showed defendant's blood pressure high and his peak flow breath test low. *Id.* at 28. The physician diagnosed defendant with post-covid condition, prescribed him steroids and an inhaler, and ordered consultation requests for a resting echocardiogram and an offsite CT chest scan. *Id.* at 29-30. Finally, the physician raised defendant's level of medical care needs from a Care Level 1 to a Care Level 2. *Id.* at 30. In addition to defendant's medical records, the court has reviewed the supplemental exhibits, including the Center for Disease Control guidelines for treating patients with post-covid condition.

On this record, the Court cannot find extraordinary and compelling reasons to reduce defendant's sentence. Defendant anchors his request for reduction of his sentence on his lack of access to care from "multidisciplinary" providers and "specialists," but the record shows that, at this time, he is receiving treatment, testing, prescription medication, dietary counseling, and other services aimed at addressing his post-covid condition while in BOP custody.

Moreover, defendant has a projected release date of August 2025 and has 43 months remaining on his 132-month sentence, which was well below the 151-month low end of his guidelines range. Given the serious nature and circumstances of defendant's underlying offense—he was found with over four pounds of methamphetamine while on post-prison supervision for state offenses—reducing defendant's sentence to time-served would undermine the sentencing factors under 18 U.S.C. § 3553(a).

The Court recognizes that defendant has made valuable use of his time while incarcerated, including by completing courses that will help him build the job, life, and self-care skills needed for a successful return to the community. As mentioned at the hearing, defendant may file a renewed motion if circumstances change, which the Court will consider on an expedited basis.

## CONCLUSION

Defendant's Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (doc. 48) is DENIED without prejudice.

IT IS SO ORDERED.

Dated this  25th  day of January 2022.

_____/s/Ann Aiken_____

Ann Aiken
United States District Judge